# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL GARCIA | : | Civil No. 1:07-CV-01886 |
| Plaintiff, | : | |
| v. | : | (Conner, J.) |
| DAWN CUMMINGS, as Administratrix of the Estate of WALTER CUMMINGS, deceased and BLACK HORSE CARRIERS, INC. | : | (Carlson, M.J.) |
| Defendants. | : | |
| v. | : | |
| ROGER'S TOWING, INC., | : | |
| Third Party Defendant. | : | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

This case comes before the court on a motion for summary judgment filed by Roger's Towing, the third-party defendant named in this action. (Doc. 37). It appearing that the motion is essentially uncontested, and it further appearing that Roger's Towing is entitled to a summary judgment in its favor, it is recommended that the motion be granted.

## II. STATEMENT OF FACTS AND OF THE CASE

This case arises out of a fatal accident between two tractor trailers on July 13, 2006. The events which led to these fatal consequences began on July 11, 2006 when, Daniel Garcia, a long-distance trucker employed by Prime, Inc., picked up a loaded trailer in Waco, Texas, and began driving north, toward Hazleton, Pennsylvania. (Doc. 37, Ex. E at p. 26.) As Garcia drove alone across the United States his trip was uneventful until he reached Virginia. (Doc. 37, Ex. E at p. 67.) While driving in Virginia, Garcia struck a strip of shredded truck tire. (Id.) Garcia continued to drive until he noticed that the brake pressure gauge indicated the pressure diminishing for the trailer brakes. (Doc. 37, Ex. E at p. 68.) Alerted to this issue, Garcia pulled into a rest stop and called his employer to obtain roadside assistance. (Id.)

Rogers Towing responded to the call for help. (Id. at p. 135.) An inspection of Garcia's truck revealed that trailer brake line hose was dragging on the road because the spring which held the brake line had broken, and the brake line had developed holes from dragging on the ground. (Id. at pp. 124, 138.) As Garcia watched, a mechanic from Roger's Towing cut out the damaged section of brake line hose and spliced the hose ends together using brass couplings. (Id. at p. 139.) An accident reconstruction expert for the Pennsylvania State Police subsequently

determined the repair was done with a "DOT approved brass coupling." (Id. at Ex. D.)

Once the splice repair was completed, Garcia and the mechanic tested the hose line together, with Garcia pushing the button to activate air pressure into the trailer brake line while the mechanic checked the repair for air leaks, a test which did not reveal any leaks in the brake line.(Id., Ex. E at pp. 140-142.) Having not detected any leaks, Garcia then drove back onto Interstate 81 confident the brakes were operating properly. (Id.).

Garcia continued his journey north on I-81, arriving in Dauphin County late on the evening on July 13, 2006. (Id. at p. 146.) As Garcia drove past Harrisburg, he later claimed that he heard the sound of escaping air and the trailer brake pressure shown on the pressure gauge dropped rapidly. (Id. at p. 155.) Concerned, Garcia decided he needed to get off the highway, (Id. at pp. 165-166), but found that he could not move his truck from the center lane of the interstate completely off the highway due to the constant flow of traffic which impeded him from fully exiting the roadway. (Id. at p. 168.) Accordingly, Garcia continued to drive in the center lane of the interstate for approximately five to six minutes while the pressure in the brake line declined, until the truck came to an abrupt stop in the middle of the highway when the trailer brakes locked. (Id. at pp. 234-235.)

Garcia then called for roadside assistance and sat in his truck, which was

3

stopped in the highway's center lane, waiting for assistance to arrive. (Id. at p. 240.) Approximately 30 to 45 minutes after Garcia stopped in the roadway, his truck was struck in the rear by the truck driven by another trucker, Walter Cummings. (Id. at p. 195.) At approximately 11:08 p.m., Cummings' truck violently collided with the rear of the stopped, disabled tractor trailer operated by Garcia. Cummings died in this accident and Garcia suffered significant personal injuries.

This fatal accident, in turn, inspired competing negligence, personal injury lawsuits brought both by Garcia against Cummings' estate and his employer, Black Horse Carriers, and by Dawn Cummings, Walter Cummings' widow, individually and as the administratrix of her deceased husband's estate, against Garcia and Prime, Inc. As part of this litigation, on February 28, 2008, Dawn Cummings and Black Horse Carriers filed a third-party complaint against Roger's, as defendants in the action brought by Garcia. (Id. Ex. C.) A nearly identical complaint was also filed by Dawn Cummings as plaintiff in the action against Garcia on June 2, 2008. (Id.) The third-party complaint alleged, in part, that Roger's may have contributed to this accident through negligent repairs of the hose line on Garcia's truck. (Id.)

Following the filing of this third-party complaint, Roger's moved for summary judgment. (Docs. 37, 41, and 49.) In this motion, Roger's argued that there was no evidence of negligence on its part and no evidence causally linking its brake line

repairs to this tragic accident, citing the results of investigations and tests conducted at the scene of the accident. (Id.)

That investigation revealed that the driver of the tow truck which had been called to haul Garcia's truck from the accident scene reported to police that after he attached a temporary axle to the trailer he was able to drive away from the scene in Garcia's truck, and experienced no problems with the drive train, the brakes, the electrical system, or the gauges of this vehicle.(Id., Ex. D.) Furthermore, a collision reconstruction performed by the Pennsylvania State police concluded: (1) that there was no evidence to support or refute the claim of an air leak that caused the trailer spring brakes to apply resulting in the vehicle becoming disabled on the roadway; (2) that the earlier air leak reported by Garcia and repaired by Roger's was "repaired with a DOT approved brass coupling;" (3) that Garcia "should have been able to drive/drag his vehicle to a position of safety where he was not obstructing traffic;" and (4) that Cummings was operating his vehicle so that he could not stop within the assured clear distance ahead. (Id., Ex. D.).

This summary judgment motion filed by Roger's was further supported through the results of an analysis conducted by Steven W. Rickard, an expert hired by Garcia as the defendant in the action brought by Cummings. As part of his analysis, Rickard removed the section of brake line hose repaired by Roger's with the coupling in the

5

center, and a "high pressure valve." The parts were subsequently taken from Rickard by the State Police. At the time the parts were given to the police, Rickard stated he had not tested them in any way. The investigating officer for the Pennsylvania State police took the repaired section of hose to an auto repair shop, where he pressure tested the hose. The repaired hose was pressure tested to 120 psi, with no audible leaks of the hose or repair coupling. A soap solution was also applied to the coupling, and no bubbles formed. All of these test results rebutted any claim that a negligent hose repair by Roger's was a contributing factor in this accident, and as a result the Pennsylvania State Police report of investigation in this matter found the repair by Roger's Towing to be adequate. (Id. Ex. D.)

Presented with the evidence marshaled by Roger's Towing, all of which refuted any claim of negligence on its part in connection with this accident, Garcia and Prime, Inc., stipulated to this dismissal of any claims against this third-party defendant. (Doc. 54.) On September 30, 2009, the district court entered an order dismissing all of Garcia's claims against Roger's Towing. (Doc. 57.) While this order concluded this action between Garcia and Roger's Towing, out of an abundance of caution the district court's order dismissing this portion of the case also provided that: "any claims of the estate of Cummings, as third-party plaintiff, against Roger's Towing, Inc., as third-party defendant, shall not be dismissed." (Id.)

On November 10, 2009, the district court then entered an order directing Cummings to respond to this outstanding motion for summary judgment. (Doc. 65.) That November 10 order also advised Cummings in clear and precise terms that a failure to respond to the summary judgment motion "shall result in the motion being deemed unopposed. See L.R. 7.6." (Id.) On November 12, 2009, Cummings' counsel informed the court that Cummings, as third-party plaintiff, did not intend to file any brief in opposition to the summary judgment motion of the third-party defendant, Roger's Towing. (Doc. 66.) Thus, the motion is both unopposed and ripe for resolution.

Having reviewed the motion, it is recommended that the motion be granted since: (1) the motion is unopposed; and (2) an independent review of the motion reveals that Roger's is entitled to judgment in its favor as a matter of law.

### III. DISCUSSION

#### A. The Motion for Summary Judgment of Third-Party Defendant Roger's Towing Should be Granted.

In this case it is recommended that the motion for summary judgment submitted by third-party defendant Roger's Towing be granted for two reasons. In the first instance, the motion should be granted because the sole remaining third-party plaintiff, Cummings, has announced that she will not be opposing the motion after

7

having been notified in writing by this Court that the failure to file a response in opposition will result in the motion being deemed unopposed. Given the current posture of this motion, which has not been opposed by any party, Local Rule 7.6 of the Rules of this Court controls here, and provides that:

> Any party opposing any motion shall file a responsive brief, together with any opposing affidavits, deposition transcripts or other documents, within fifteen (15) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within five (5) days after service of the motion. <u>Any respondent who fails to comply with this rule shall be deemed not to oppose such motion</u>.

Local Rule 7.6 (emphasis added).

Since this motion is now deemed unopposed, it should be granted by this Court.

In addition, we have independently assessed the merits of this motion, and Roger's Towing's claim that there is no evidence causally linking its brake line repairs to this accident. Having conducted this review were are convinced that summary judgment in favor of Roger's is entirely appropriate here.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; <u>White v. Westinghouse Elec. Co.</u>, 862 F.2d 56, 59 (3d Cir. 1988). A factual dispute is material if it might affect the

outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 249. The evidence presented must be viewed in the light most favorable to the non-moving party. Id. The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, the nonmoving party may not simply sit back and rest on the allegations in the complaint. Instead, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). The evidence must be viewed in the light most favorable to the nonmovant. See Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

As a federal court exercising diversity jurisdiction in this case, we are obliged to apply the substantive law of Pennsylvania to this dispute. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000) In this case the third-party plaintiffs can maintain a negligence claim against Roger's only if they establish all of the elements for a negligence cause of action under Pennsylvania law, which requires proof of the following four essential elements as part of any claim: (1) a duty on the part of the defendant to conform to a certain standard of conduct with respect to the plaintiff; (2) a breach of that duty by the defendant; (3) a causal connection between the defendant's conduct and the injury suffered by the plaintiff; and (4) actual loss or damage suffered by the plaintiff. Schmoyer by Schmoyer v. Mexico Forge, 649 A.2d 705, 707 (Pa. Super. 1994).

In this case, the undisputed and unchallenged evidence shows that Roger's

breached no duty that it owed to the third-party plaintiffs and further establishes that there is no causal connection between the repair performed by Roger's and the accident which killed Cummings and injured Garcia. Quite the contrary, that undisputed evidence shows that the Pennsylvania State police concluded: (1) that there was no evidence to support or refute the claim of an air leak that caused the trailer spring brakes to apply resulting in the vehicle becoming disabled on the roadway; (2) that the earlier air leak reported by Garcia and repaired by Roger's was "repaired with a DOT approved brass coupling;" (3) that Garcia "should have been able to drive/drag his vehicle to a position of safety where he was not obstructing traffic;" and (4) that Cummings was operating his vehicle so that he could not stop within the assured clear distance ahead. (Id. Ex. D.). This finding was further confirmed by a state police examination of the section of brake line hose repaired by Roger's. These hose parts were received from an expert retained by Garcia, and were taken by the investigating officer for the Pennsylvania State police, who pressure tested the hose to 120 psi, with no audible leaks of the hose or repair coupling. A soap solution was also applied to the coupling, and no bubbles formed. All of these test results confirmed the adequacy of this repair and rebutted any claim that a negligent hose repair by Roger's was a contributing factor in this accident. (Id.)

On these undisputed facts there is simply no basis for holding Roger's liable in this matter since there is no proof of negligence on the part of this third-party

11

defendant, and no evidence that actions by the third-party defendant played any causal role in the accident. Therefore, Roger's Towing is entitled to summary judgment in this case.

## IV. RECOMMENDATION

For the reasons set forth above, it is RECOMMENDED that the Court GRANT the third-party defendant's motion for summary judgment. (Doc. 37).

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

<u>S/Martin C. Carlson</u><br>
Martin C. Carlson<br>
United States Magistrate Judge

Dated: March 5, 2010